WILLYS G. PECK and another *vs.* SUPERIOR SHORT LINE RAILWAY COMPANY.

January 26, 1887.

Condemnation Proceeding—Unity of Contiguous Parcels.—In condemnation proceedings, to constitute unity of property between two contiguous, but *prima facie* distinct, parcels of land, there must be such a connection or relation of adaptation, convenience, and actual and permanent use, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used.

Condemnation proceedings. On the trial of the plaintiffs' (landowners') appeal from the award in the district court for St. Louis county, before *Stearns, J.,* the jury found specially that the value of the "lots" mentioned in the opinion was $1,500, and returned a general verdict for plaintiffs, assessing their damages at $5,000. The defendant appeals from an order directing that judgment for $5,000, with interest, etc., be entered in favor of plaintiffs.

*John D. Howe* and *Ensign, Cash & Williams,* for appellant.
*White, Shannon & Reynolds,* for respondents.

BERRY, J. Respondents own a tract of land of several acres in area, at Duluth, part of which they occupy and use as the site of a steam saw-mill, and the remainder as piling ground for lumber there manufactured. They also own three contiguous town lots, separated

from this tract by a street. These three lots the appellant railway company seeks to condemn, and, in the course of the trial in condemnation proceedings, the respondents claimed that the lots and the tract mentioned were one property or plant, and that, therefore, they were entitled to receive not only the value of the lots considered by themselves, but such additional damages as their taking would occasion to the entire plant or property as a whole. The question whether the unity of property contended for existed, having been left to a jury, was, in effect, answered in the affirmative by a general verdict in respondents' favor for $5,000, accompanied by a special finding that the value of the three lots by themselves was $1,500.

The substantial question presented here is whether there was evidence reasonably tending to show that the lots and the tract were so connected and related that they could properly, *i. e.*, reasonably, be regarded as one property. Their separation by the public street does not necessarily prevent this. *St. Paul & Sioux City R. Co.* v. *Murphy*, 19 Minn. 433, (500;) *Wilcox* v. *St. Paul & N. P. Ry. Co.*, 35 Minn. 439, (29 N. W. Rep. 148;) *Welch* v. *Milwaukee & St. Paul Ry. Co.*, 27 Wis. 108; *Chapman* v. *Oshkosh, etc., R. Co.*, 33 Wis. 629. They are contiguous in the sense of touching each other by embracing the soil of the street; but they are nevertheless *prima facie* distinct parcels of land. Hence the burden is upon the respondents, who claim their entirety, to produce the facts which make it out. *Wilcox* v. *St. Paul & N. P. Ry. Co., supra.*

That the "tract" was an entirety, or part of one, at least, there is no question or dispute. It was all "mill property," properly so called; and why? Because it was adapted to, reasonably necessary for, and ordinarily and generally and permanently used in, the general business there carried on, viz., the manufacture of lumber, and, as a necessary incident thereof, its storage. Now, if these lots were a part of the same entirety as the "tract," it must be because they also are a part of the "mill property," properly so called. If they are a part of this entirety,—"the mill property,"—it must be for the same general reason which makes the whole "tract" itself the whole or a part of the same. That is to say, they must be adapted to, reasonably necessary for, and ordinarily, generally, and permanently used

in, the business there carried on, viz., the manufacture of lumber, and its storage.

We do not undertake the perilous task of formulating a *specific* and *exact* rule to govern all instances in which the question of entirety is involved. The question is probably so much one of fact as to make it impracticable to lay down any such rule which will not be a hindrance, rather than a help. As with respect to questions of negligence, each case, as it comes up, must rest largely upon its own facts. But we may safely go so far as to say, in general terms, that in condemnation proceedings, to constitute unity of property between two contiguous, but *prima facie* distinct, parcels of land, there must be such a connection or relation of adaptation, convenience, and actual and permanent use between them, as to make the enjoyment of the parcel taken reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used.

Now, the evidence in this case shows that respondents purchased the "lots" and the "tract" in the fall of 1881; that the mill was erected and started up in 1882; that, about the same time, they erected a rough and evidently temporary shanty blacksmith shop, (used in connection with the mill, when running,) *partly in the street*, and partly on the lots, which was, however, removed in the fall of 1884; that laths manufactured in the mill were piled upon the lots (as well as upon other neighboring vacant property in the same block, belonging to other parties) in 1883 and 1884; that since the summer of 1884 when the lots were "cleaned up," and since the time (October, 1885) when the condemnation proceedings were instituted, and including the time of the trial in April, 1886, respondents have not been using the lots for any purpose, either in connection with the "tract" across the street, or otherwise, except to pass across them as across other open property, and as other persons did. This evidence, and all the evidence in the case, is, of course, to be read with reference to the rule before stated, that the burden is upon respondents to overcome a *prima facie* presumption in favor of the distinctness of the "lots" and "tract" and against their entirety. So read, we are of opinion that it wholly fails to bring the case within the general proposition before

enunciated. It does not fairly tend to make out any such connection or relation of adaptation, convenience, and actual and permanent use, as to render the enjoyment of these lots reasonably and substantially necessary to the enjoyment of the "tract" in the most advantageous and profitable manner in the business for which it is used. It does not show any reasonable necessity for using the two together and as one property. The use which has been made of the lots in connection with the mill business was merely fugitive and temporary,—not in any proper sense permanent, nor reasonably or substantially necessary,—a mere expedient for a short time,—and even that is no longer continued, and had not been for a year and a half before the trial.

When we advert to the further consideration that it appears by (in effect) undisputed testimony that about the time of the commencement of the condemnation proceedings the respondents offered to sell these lots, by themselves, to the appellant for about the price at which they were appraised by the jury, viz., $1,500, it is apparent that in intention and understanding the respondents did not regard the lots as a necessary part of the mill plant or property.

We have not noticed the allegation of the appellant's petition, as to the use of the lots by respondents as "a lumber-yard," because it seems to us to possess little or no probative force. Nor have we alluded to the expressions of opinion from the mouths of respondents' witnesses as to the necessity of the lots to the mill plant, because, in view of the *facts* disclosed, such opinions appeared to us to be of no special weight.

This disposes of the important matters in the case, the result being that the order appealed from is reversed.