<div style="margin-left:2em">208    50<br>213    ¹2̅5̅7̅</div>

# Kossler *v.* Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

*Railroads—Eminent domain—Damages—Business profits—Salt well.*

In a proceeding against a railroad company to assess damages for the taking of a lot of ground under the right of eminent domain, the value of a salt water well upon the premises is one of the elements of value of the property. But the market value of such a well is not to be determined by evidence of the profits which may be made by treating the product of a well in a manufacturing plant operated with successful business skill. The market value of the well is merely its selling value as such.

In condemnation cases the jury have no right to allow damages for distinct items and reach a verdict by adding them together.

*Railroads—Eminent domain—Damages—Adjoining properties.*

In order that two properties having no physical connection may be regarded as one in the assessment of damages for right of way, they must be so inseparably connected in the use to which they are applied as that the injury or destruction of one must necessarily and permanently injure the other.

In a proceeding to assess damages for a right of way for a railroad located over one of two lots, it appeared that the two lots although adjoining were separated by a stream with such high and steep banks as to permit no passage, except by a bridge, and that such a bridge had not been built. It did not appear from the evidence that the two lots had ever been used as a single tract. There was testimony that the smaller tract which was not touched by the railroad had been purchased for the purpose of affording access by means of a bridge to the other tract. *Held,* that it was error for the trial court to charge the jury as a matter of law that they could consider the two lots as a whole, in assessing the damages.

Argued Nov. 10, 1903. Appeal, No. 182, Oct. T., 1903, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1901, No. 473, on verdict for plaintiff in case of William Kossler et al. v. Pittsburg, Cincinnati, Chicago & St. Louis Railway Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Appeal from award of jury of view. Before COLLIER, J.

From the record it appeared that the plaintiffs were owners of two adjoining tracts of land in the 34th ward of the city of Pittsburg. The right of way of the railroad was located solely upon the larger of the two tracts. Upon it there had been a salt well with a plant equipped for the manufacture of salt. This plant was burned down in 1891, and had not been rebuilt. The two tracts were separated by a very steep ravine, and were not accessible to each other, except by a bridge which had not been built.

John A. Beck, one of the plaintiffs, being upon the stand, was questioned as follows, to wit:

" Q. You burned down in 1891 ? A. Yes, sir. Q. At the time the fire took place, what was the production of this well ?"

To which question defendant objected as follows :

Objected to by the defense as irrelevant and immaterial ; being nine years before the condemnation took place.

To which objection plaintiffs' counsel made the following offer, to wit :

Plaintiffs' counsel propose to show by the witness on the stand and other witnesses, that the well in question was an exceedingly valuable salt well, that it never was abandoned by the owners ; and that it was their intention at the first convenient time to resume operations. That wells of this description do not lose in their value as to production by being shut in, but can be resumed at any time with substantially the same production as at the time of closing them in. This for the purpose of showing as one element in the value of the salt well in question.

To which offer defendant objected as follows, to wit :

Objected to by the defense as incompetent, as too vague and general in its terms. The fair market value of the property as a whole at the time of the condemnation, in its then present condition, being the fair measure of damages.

Upon which objection the court ruled as follows, to wit :

The Court: The objection is overruled. Exception to defendant. [1]

And thereupon Mr. Ferguson proceeded to examine his witness as follows, to wit :

Mr. Ferguson : "Q. Mr. Beck at the time the well was shut down you have said it was producing salt water ? A. Yes, sir. Q. In considerable quantities ? A. There was enough there for 250 barrels a day. . . . Q. You had no vessels to receive that water after the fire there, had you ? A. No, sir. Q. From your experience, pumping very strong as you have stated, are you able to say what the total production per day would be ? A. Yes. It was pumping more there than would produce 250 barrels of salt."

Pursuant to plaintiffs' offer to show the value of the salt well, Alexander Martin, a witness on behalf of the plaintiffs being on the stand, was questioned and testified as follows, to wit: "Q. Assuming that this well produced eleven degree water, and produced sufficient water to make 250 barrels of salt a day, would there be any saving in such a well, located, as this well was, as compared with a well of the same sort with water at nine degrees? A. Yes, there would be quite a saving. Q. What would be the general nature of that saving? A. It would be in fuel. It would cost that much less. Q. Is there any well recognized formula as to the amount of fuel req-

uisite to produce a barrel of salt, when the water is at varying degrees of strength? A. Yes, sir; I have studied that pretty closely and tested it at times. Q. What is that rule? A. Eight degree water will cost 34.30 cents a barrel to produce, with coal at five cents a bushel. Nine degree water 30.25 cents; ten degree water 27.43 cents, and eleven degree water would cost 22.31 cents. Q. That is, with coal at five cents a bushel? A. Yes, with coal at five cents a bushel. There would be a net gain of over eight degree water of twelve cents per barrel."

The same witness being still upon the stand was questioned and testified as follows: " Q. Now give us the estimate you reach as to what the value would be. A. Well, I would consider it worth $100,000."

The Court: Speaking of the time of the appropriation in 1900, you think the well would be worth that in the market in 1900, the way it stood there, not having been operated for nine years? A. I am basing it on the 250 barrels a day. Q. Are you giving your opinion of the value of the well as it stood there in 1900, when the railroad took it, not having been operated for nine years; is that the value at that time, under those circumstances? What was the market value in 1900?"

Mr. Ferguson: " Q. What do you think it would have sold for in the market? A. I was going on manufacturing 250 barrels a day."

The court charged in part as follows:

All those things affect the market value. Look at it in that view. What would be the market value of this property as a whole—and I now include specially the piece across the run on Main street. The railroad company did not touch the piece across the run, but it appears to be a part of the property as a whole. There was only Saw Mill run between, and I liken that to a farmer having a run, it not being a public stream, through his farm. Being for the benefit of the other part, we take it as a whole, and as a matter of law I instruct you to include the whole.

Verdict for plaintiff for $62,000 upon which judgment was entered for $50,000, all above that amount having been remitted. Defendant appealed.

*Errors assigned* among others were (1) ruling on evidence, quoting the bill of exceptions; (7) portion of charge as above, quoting it.

*William S. Dalzell,* of *Dalzell, Scott & Gordon,* for appellant. —It was error to admit in evidence the matters referred to in the first assignment of error: Harris v. Schuylkill River, etc., R. R. Co., 141 Pa. 242; Struthers v. Phila., etc., R. R. Co., 174 Pa. 291; Shano v. Bridge Co., 189 Pa. 245; Searle v. Lacka-wanna, etc., R. R. Co., 33 Pa. 57; Reading, etc., R. R. Co. v. Belthaser, 119 Pa. 472; Hamilton v. Pittsburg, etc., R. R. Co., 190 Pa. 51.

The learned court erred in admitting evidence of and instructing the jury to value the two tracts owned by the plaintiffs as though they were one piece: Rudolph v. Penna. S. V. R. R. Co., 186 Pa. 541; Gibson v. Bridge Co., 192 Pa. 55; Potts v. Penna. S. V. R. R. Co., 119 Pa. 278; Penna. Co. for Ins., etc., v. Penna. S. V. R. R. Co., 151 Pa. 334; Cameron v. P. & L. E. R. R. Co., 157 Pa. 617.

*J. S. Ferguson,* with him *J. H. White, S. W. Childs, John Reed Scott* and *E. G. Ferguson,* for appellees.—In estimating the value of the property before the taking its possible and probable uses are important elements, and may be shown by the opinion of experts: Harris v. Schuylkill River, etc., Railroad Co., 141 Pa. 242; Shano v. Bridge Co., 189 Pa. 245; Curtin v. Nittany Valley R. R. Co., 135 Pa. 20; Danville, H. & W. R. Co. v. McKelvey, 1 W. N. C. 338; Little Schuylkill Nav., etc., Co. v. French, 81* Pa. 366 ; Dorlan v. East Brandy-wine, etc., R. R. Co., 46 Pa. 520.

The instruction as to the valuation of the two lots was proper: Welch v. Milwaukee & St. Paul Ry. Co., 27 Wis. 108.

OPINION BY MR. JUSTICE POTTER, January 4, 1904:

This was a proceeding in the court below, to ascertain the amount of compensation to which the plaintiffs were entitled, for certain property belonging to them, which had been appropriated by the defendant company, under the power of eminent domain. The land taken consisted of two tracts, the larger one, fronting on Steuben street, and having upon it an old

salt water well.　The smaller tract was in the rear of the other, and consisted of a narrow lot, extending through to Main street; and, according to the testimony, it had been purchased for the purpose of affording access to the larger tract from the rear.　The two pieces were, however, separated by a stream, Saw Mill run, with high, steep banks, requiring a bridge to admit of passage, and while such a bridge was contemplated, it was not built.　So that the lots were not, at the time of entry upon the property, joined in such a way as to permit of connected use.

The property was condemned for railroad purposes by the defendant company in July, 1900.　A plant for the manufacture of salt was located upon the larger tract prior to 1891, but in that year it was burned down, and not rebuilt.　No use was made of the salt water well after the fire, in 1891, although the plaintiffs claimed that they were about to rebuild the plant, and again operate the well, at the time their land was taken by the defendant company.　Both parties to the present controversy thoroughly understand, and admit that the correct rule for measuring the damages, is to take the difference between the market value of the property as it was just before the entry, and the value of what was left afterwards.　One of the elements alleged to contribute to the value of the property was the salt water well, and in estimating the value of the property at the time of the taking, this fact was, of course, to be taken into consideration.　But the appellant alleges in the first assignment of error that the court below erred, in admitting against the objection of the defendant, evidence not merely as to the market value, or selling value of the well, at the time of the entry in 1900, but as to the production of salt water by the well in 1891, some nine years before.　It was also shown that, in the opinion of the witnesses, the quantity and quality of salt water coming from the well was about the same in 1900.　That it was sufficient to make 250 barrels of salt per day, if there had been a plant in operation for its manufacture.　That with coal at a certain price per bushel, and the water of a certain degree of strength, salt could be manufactured at a figure which would yield a good business profit; and that, taking into account all these conditions, the well was of great value.

But the conditions upon which these estimates were based did not all exist. There was no manufacturing plant to convert the water into salt. Its establishment would have required the investment of a large amount of capital, and whether or not any profit could have been made in the business depended upon many contingencies. Obviously any estimate of the value of the well, based upon the possible profits arising out of the business of manufacturing its products into an article of merchandise, would require the consideration of elements altogether too remote and speculative to be admissible in the issue being tried in this case. The effect of such an estimate could only be to leave an erroneous impression upon the minds of the jury, and to give them an exaggerated idea of the value of the well. Its tendency was to emphasize unduly that which constituted only an element in the result they were seeking, which was, to ascertain the value of the property as a whole.

It is difficult at best in such cases to prevent the separate valuation of different items, and the making up of a verdict by means of adding them together. But the rule is well settled that the jury have no right to allow damages for distinct items, and reach a verdict in that way. This rule was clearly recognized by the learned trial judge, and was stated to the jury in the charge. But the zeal of counsel for the plaintiffs in the presentation of evidence led him to introduce testimony which went far beyond the line of competency in fixing the value of the property as it was at the time of its taking.

That was the question in the case ; not its value as it might have been, improved as a manufacturing plant. In so far as the salt water well constituted an element of value, it was merely as contributing a certain volume of salt water. Whether or not this product, as such, had any market value, does not appear from the evidence. No use had been made of it for a period of some nine years, and there was nothing to show what its value was, except in connection with the erection of an evaporating plant, and its operation subject to the contingencies of business. It is suggested in the argument of appellee, that the proof of the value of the salt water well in this case is to be likened to that of an oil well. Be it so : the market

value of an oil well is not determined by evidence of the profits which can be made from the product of the well, by means of a refinery erected upon the spot, and operated with successful business skill. Its market value is its selling value as a well. In the present case, the market value of the salt water well, if it were shown to have had any, at the time of the taking, would be one of the elements entering into the value of the property as a whole. If the well was destroyed, its value would also be one of the elements of depreciation, to be considered in ascertaining the loss in the selling value of the whole property caused by the entry of the defendant company.

We are convinced that the first assignment of error should be sustained.

The learned judge, in his charge, also instructed the jury as a matter of law, to consider the two pieces as a whole, in assessing the damages, and this instruction is, by the seventh assignment, alleged to be error. It does not appear from the evidence that the two lots have ever been used as a single tract. They were separated. for all practical purposes, at the rear by a stream with such high and steep banks as to forbid passage except by a bridge; and such a bridge was not built. The lot fronting upon Main street was not touched or interfered with in any physical way by the defendant. It would appear from the evidence that the possession of the Main street lot would, if the properties were connected by a bridge, add to the value of the Steuben street property; but it is difficult to see how the Main street lot could. be affected by the taking of a part of the Steuben street lot. Certainly such a result was not so clearly manifest as to justify the court in saying as a matter of law, that the two lots were to be regarded as one in the assessment of the damages for the right of way, which passed over one only. The rule is as stated in Potts v. Penna. S. V. R. R. Co., 119 Pa. 278, and reiterated in Rudolph v. Penna. S. V. R. R. Co., 186 Pa. 541: "In order that two properties having no physical connection may be regarded as one in the assessment of damages for right of way, they must be so inseparably connected in the use to which they are applied as that the injury or destruction of one must necessarily and permanently injure the other."

As the evidence now stands, it is questionable whether there was sufficient even to submit to the jury, within the rule just quoted. At any rate, there was not enough to support a binding instruction to regard the two lots as one property.

The judgment is reversed and a venire facias de novo awarded.