(No. 33735.—

THE CITY OF CHICAGO, Appellee, *vs.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *et al.,* Appellants.

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

HERSHEY, C.J., and BRISTOW, J., concurring in part and dissenting in part.

STUART S. BALL, and WILLIAM K. BATCHELDER, both of Chicago, (SIDLEY, AUSTIN, BURGESS & SMITH, and MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, both of Chicago, of counsel,) for appellants.

JOHN C. MELANIPHY, Acting Corporation Counsel, of Chicago, (ROBERT J. NOLAN, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Eminent domain proceedings were commenced in the circuit court of Cook County by the city of Chicago, hereinafter referred to as the petitioner, to acquire for use as a public parking area certain property owned by Equitable Life Assurance Society of the United States and used by its lessee, Wieboldt Stores, Inc., as a free customer-parking lot in conjunction with its Englewood store. A cross petition was filed by these defendants in which they alleged that the taking of the parcel would seriously depreciate the value of the remaining store property and that they were entitled to additional compensation for this resulting damage. Upon trial, however, the court refused to allow the introduction of any evidence in support of the cross petition on the grounds that such was not a proper element of damage in an eminent domain proceeding. The jury thereafter fixed the value of the parking lot at $130,000 and condemnation judgment was entered accordingly. On direct appeal, the defendants' chief contentions are (1) that they were unduly restricted in presenting proof of the condemned parcel's value, and (2) that the trial court erred in refusing to permit evidence in support of the cross petition.

The properties in question are located in the city of Chicago near the intersection of Sixty-third and Halsted streets, the so-called hub of the Englewood shopping area. Immediately to the west and lying parallel with Halsted are, first, Green Street, and then Peoria Street, both of which run in a north and south direction. The store property faces north on Sixty-third Street between Peoria and Green and extends 250 feet back along the east side of Peoria Street to a public alley. This alley, which is 16 feet in width, extends east 125 feet from Peoria Street to a north-south alley which connects with both Green and Sixty-fourth streets. The parking lot is rectangular in shape and is bounded on the north by the public alley, on the west by Peoria Street, on the south by Sixty-fourth

Street, and on the east by the north-south alley and is equipped with asphalt paving, car stops, lights, and is enclosed by a cyclone fence. For the convenience of customers, a rear entrance to the Wieboldt store opens near the public alley adjoining the parking lot.

The defendants' contention that they were unduly restricted in presenting proof of the condemned parcel's value is, we believe, meritorious. The record discloses that the petitioner's expert witnesses testified that the property's highest and best use was for a free parking lot and that in arriving at this conclusion, and also that of value, they considered such factors as location, sales of similar properties, and parking needs in this locality. Yet, the defendants were, in many instances, unable to cross-examine in regard to these factors. For example, even though Clem Mulholland testified that his opinion of value was influenced by location and sales of similar property in the general area, the trial court refused to allow the following cross-examination questions: (1) "In arriving at your opinion as to the value of this property, did you consider the proximity of this lot to a large retail store?" and (2) "Have there been any sales of areas of a size equal to this in recent years in this neighborhood?" Neither were the defendants allowed, upon direct examination, to give facts in support of their opinions as to use and value. Ronald Chinnock, a defense witness, stated that in his opinion the value of the parking lot property was $206,160. However, he was not permitted to say how he arrived at this valuation. As another example, Graham Aldis, in laying a foundation for his value opinion said: "I took into account its proximity to the business, this 63rd and Halsted retail center which I have described, its particular proximity to the Wieboldt's store, the fact that it was very handy for anyone wishing to park, any potential customer of the area who came in from the west or from the south, because as I stated it was on the fringe of that area, and I took into account the ex-

treme need for parking facilities in connection with such a shopping area as 63rd and Halsted." Because he had made particular reference to the Wieboldt store, the court refused to allow this witness to proceed with his valuation. Such rulings were clearly erroneous. An expert's opinion can best be tested by examining the facts upon which it stands. (*Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 154 Ill. 656.) If this is not done, the jury has no basis, whatsoever, upon which to evaluate such testimony. Questions of this nature can not be decided in a vacuum. Additional information is necessary to give the opinion support and to clarify its meaning. This is well illustrated by the fact that although some of the petitioner's witnesses testified that the highest use of the condemned parcel was for free parking purposes, they nevertheless said it was worth from $94,000 to $99,000. Since it is quite evident that property which can produce no income has but little value, more facts were needed to explain this apparent inconsistency.

The measure of compensation for land taken by eminent domain proceedings is its fair cash market value for the highest and best use to which it is available, even if, at the time of filing the petition, the land is not being put to such use. (*Department of Public Works and Buildings* v. *Lambert,* 411 Ill. 183; *City of Chicago* v. *Harbecke,* 409 Ill. 425; *Forest Preserve Dist.* v. *Lehmann Estate,* 388 Ill. 416.) Thus, although the condemned parcel was being presently used for free parking purposes, the owners should have been allowed to offer evidence as to its commercial use and facts in support thereof. Since the value of property depends to a great extent upon its physical location, and since along with other elements it provides the very foundation upon which an opinion is based, it was entirely proper for the defendants in this case to inquire as to whether these factors had been fully considered by the witnesses. (*Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 Ill. 97.) It is

our opinion that, by denying them this right, the lower court committed reversible error.

The defendants contend that the court also erred in refusing to permit evidence in support of their cross petition. With this we cannot agree. In order to recover damages in an eminent domain proceeding for property not actually taken, it must appear that this and the condemned land are contiguous, that is, they are either physically joined as a single unit or so inseparably connected in use that the taking of one will necessarily and permanently injure the other. (*People ex rel. Tyson* v. *Kelly*, 379 Ill. 297; *Stetson* v. *Chicago and Evanston Railroad Co.* 75 Ill. 74; *Kossler* v. *Pittsburg, Cincinnati, Chicago & St. Louis Railway Co.* 208 Pa. 50, 57 Atl. 66; *Peck* v. *Superior Short Line Line Railway Co.* 36 Minn. 343, 31 N.W. 217; 6 A.L.R. 2d 1203.) The defendants admit that the store and parking properties are not physically connected, but argue that they are so interrelated as to warrant consideration under the above-mentioned rule.

On at least two prior occasions we have had the opportunity to consider similar statements of façt. In *White* v. *Metropolitan West Side Elevated Railroad Co.* 154 Ill. 620, the appellant owned property on both sides of Tilden Street in Chicago and, although only a portion south of the street was being condemned, he contended that since the tracts had been purchased for a common use, they were contiguous and should both be considered in the eminent domain proceedings. In refusing to accept this theory, we said: "If by the construction and operation of the railroad on the lot south of Tilden street the property of appellants lying north of that street will be specially damaged, and the damages sustained by appellants are not common to the public, they have a complete remedy, in an action at law, to recover all damages sustained; but where proceedings are instituted, under the Eminent Domain act, to condemn one lot or tract of land, the owner cannot bring into

that proceeding another tract of land not contiguous and not connected with the land condemned, no portion of which has been taken, and recover such consequential damages as he may have sustained. But it is said, the two tracts of land were purchased to be used for one purpose, as one tract of land. Whatever may have been the intention or purpose in purchasing the two tracts of land can make no difference. The two tracts of land must be considered as they existed when the proceeding was instituted. At that time they were separated by a public street. They were in no manner connected, and never could be connected without the consent of the city, which may never be obtained. They were not used for any common purpose as one tract of land. Two tracts of land might be so connected and used as to constitute but one tract, and in such a case, in a proceeding to condemn a part, it would be proper to consider the damages to the whole. But this record presents no such case."

A similar question arose in *Metropolitan West Side Elevated Railroad Co.* v. *Johnson,* 159 Ill. 434, where a strip was condemned for highway purposes through a residential subdivision. Again we held that, although recovery could be had for damages to contiguous property not taken, those parcels which were separated from the condemned area by public streets or alleys were not a proper subject of the eminent domain proceedings. We can see no reason why we should arrive at a different result in the present case. Here, the store and parking properties were acquired at different times, from different owners, and for different purposes. The former is used for retail merchandising while the latter is used for public parking. Whereas the condemned parcel was formerly used by Wieboldt for free customer parking, it will now be used by the city as a paid parking area. It may well be that the joint ownership of these parcels is convenient or even beneficial, yet it cannot be said that the elimination of the free parking facilities

will necessarily and permanently injure the store property. This view is supported, not only by reason that other national chain stores are operating in the same vicinity without benefit of such parking facilities, but also by the fact that throughout their offer of proof and briefs, the defendants were not so much interested in the loss of the parking facilities themselves as they were concerned about the elimination of future expansion possibilities. For example, at page 28 of their brief, they state: "This means that the taking of this lot forever freezes this store to its present size, and prevents the use of this land for expansion of store functions. It also forever prevents the erection of a new retail store building on this land. Such a taking will have an obvious effect upon the fair cash market value of this adjoining land, and appellants were entitled to show it." It is elementary that a mere intention on the part of the owner to put properties to a common use is not sufficient to allow a cross petition in a condemnation action, but such properties must be considered as they existed at the time the proceedings were commenced, (*White* v. *Metropolitan West Side Elevated Railroad Co*. 154 Ill. 620; 6 A.L.R. 2d 1203,) and whether or not the cross petition is proper is a question of law which must be decided by the court. (6 A.L.R. 2d 1207.) Under the facts and circumstances of this case, we are of the opinion that the properties in question are not so interrelated as to warrant their consideration as a single unit.

Although many other alleged errors have been assigned by these defendants, the possibility of their recurring at a new trial is unlikely. To elaborate upon these points, therefore, would serve no useful purpose.

After careful consideration, we hold that the trial court was correct in refusing to permit evidence in support of the cross petition but erred in restricting proof of the condemned parcel's value, and for that reason, the judgment of the circuit court of Cook County is reversed

and the cause remanded to that court for further proceedings not inconsistent with this decision.

*Reversed and remanded.*

Mr. CHIEF JUSTICE HERSHEY, concurring in part and dissenting in part:

I concur in a reversal based on undue restriction of proof of value, but I also believe the trial court erred in refusing evidence in support of the cross petition.

On this record, I consider the land not taken (the store property) so close in proximity, so integrally connected, and so unified in use with the land taken (the customer parking lot), as to permit evidence of damage to the land not taken.

While it is often said that the tracts must be "contiguous," it is generally recognized that physical touching or its lack is not conclusive. For the basic test is unity of use. (See 6 A.L.R.2d 1197-1237.) To say here that the store property is used for retail merchandising while the parking property is not, strikes me as unrealistic. The lot is, of course, used for parking—but for store customers. In a crowded metropolitan area, this may be not only "convenient and beneficial" but vital. It seems clear that the parking lot is an integral part of the Wieboldt retail operation, and if as a result of condemning the parking property the market value of the store property declines, there should, in justice, be compensation for land damaged but not taken. Illinois Constitution, art. II, sec. 13.

If present use, rather than past acquisition and purposes, is determinative (as the majority seem to say, citing *White* v. *Metropolitan West Side Elevated Railroad Co.* 154 Ill. 620,) then the fact of acquisition "at different times, from different owners, and for different purposes," is irrelevant. Moreover, future uses, such as the possible expansion referred to, appear not greatly material to a consideration of present value, as opposed to the present facts themselves

showing a regular full use for parking by store customers. I note that the 16-foot alley said to preclude an interrelationship between the two tracts was at one time owned by the respondents and became a public way through their action, and it is of virtually no use to anyone except Wieboldt and its customers.

This is a case of first impression in Illinois. While the majority strongly rely upon two early railroad condemnation cases, *White* v. *Metropolitan West Side Elevated Railroad Co.* 154 Ill. 620 (1894), and *Metropolitan West Side Elevated Railroad Co.* v. *Johnson,* 159 Ill. 434 (1896), both may be distinguished.

In the *White case,* the owners' sole contention was that "both tracts (the one north and the one south of Tilden Street) were purchased with the *intention* of using the same together as one property and one plant for a polytechnic institute." There was no *present* unified use of the tracts.

The *Johnson case* involved residence properties. The railroad condemned a strip for right of way through a platted subdivision, and the court held it was proper to exclude evidence of damage as to all lots separated from those partly taken by streets, alleys, or lots owned by other parties.

Where there is a present, unified, business use, as in the instant case, courts generally have adopted a more liberal view. (See 6 A.L.R.2d 1227-37.) One reason for this is expressed as follows at page 1226-7 of the annotation: "There is an outstanding difference between the properties heretofore considered and such properties as may be roughly termed business and industrial units. In the case of farms, ranches, timberlands, building lots and even residence properties, the remaining portion usually retains its intrinsic value, only incidentally impaired by the loss of the part taken and the use to which it is to be put. But when part of an industrial property is taken, the result is likely to

be the destruction of the enterprise. This seems to call for a more liberal reading of the rule permitting severance damages where virtual contiguity is shown."

Illustrative is *Baetjer v. United States*, 143 F.2d 391, where the land not taken was separated by 17 nautical miles of water. The rationale of the court, stated at page 395, is convincing: "Integrated use, not physical contiguity, therefore, is the test. Physical contiguity is important, however, in that it frequently has great bearing on the question of unity of use. Tracts physically separated from one another frequently, but we cannot say always, are not and cannot be operated as a unit, and the greater the distance between them the less is the possibility of unitary operation, but separation still remains an evidentiary, not an operative fact, that is, a subsidiary fact bearing upon but not necessarily determinative of the ultimate fact upon the answer to which the question at issue hinges."

When this reasonable rule is applied to the facts here, there remains no doubt but that the court erred in refusing the respondents permission to introduce evidence in support of the cross petition.

Mr. Justice Bristow joins in the foregoing concurring and dissenting opinion.