884

The Department of Public Works and Buildings, Petitioner-Appellant,
*v.* Edward W. Hanna *et al.*, Defendants-Appellees.

(No. 70-60; )

Fifth District—December 21, 1971.

*Rehearing denied March 15, 1972.*

William J. Scott, Attorney General, of Springfield, (Byron L. Connell, Jr., Special Assistant Attorney General, and William P. Ryan, Assistant Attorney General, of counsel,) for appellant.

W. C. Spomer, of Cairo, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

The Department of Public Works and Buildings brings this appeal from the verdict and judgment of the trial court in a condemnation pro-

ceeding where the verdict for the land taken was $16,000 and for damages to the remainder not taken $5,500.

The property involved which was taken (not by quick-take) consists of twenty-seven lots in a subdivision in a rural area near Future City, approximately one-half mile north of Cairo in Alexander County adjoining U.S. Highway No. 51. The land taken is separated by a street from four lots which were improved with a two story building, formerly used as a school but which had been remodeled and operated for a time as a tavern. At the time of filing of the petition for condemnation the building was not in active use as a tavern, but a part of the property around the tavern was being used for storage purposes by the owner.

A portion of the land taken had been used for customer parking at the tavern and for two signs advertising the tavern. A portion of the property around the tavern building was low-lying and not suitable for customer parking unless filled, although it was being used in part by the owner for storage of horse racing carts, bikes and equipment.

The petitioner's objections are based upon the trial court's refusal to permit the Department to open and close the argument to the jury, and for permitting the jury to evaluate damages to the property not taken to which the petitioner contends there was no damage as a matter of law.

■■ The contention of the petitioner that there was no damage to the land not taken is based upon *City of Chicago v. Equitable Life Assur. Soc. of the U.S.*, 8 Ill.2d 341, 134 N.E.2d 296, and related cases. This case in 1956 reaffirmed the rule, "In order to recover damages in an eminent domain proceeding for property not actually taken, it must appear that this and the condemned land are contiguous, that is, they are either physically joined as a single unit or so inseparably connected in use that the taking of one will necessarily and permanently injure the other." In the *City of Chicago* case the land taken was used as a customer parking lot in connection with a retail store which was not taken. In this same case the Supreme Court said, at page 348, "It is elementary that a mere intention on the part of the owner to put properties to a common use is not sufficient to allow a cross petition in a condemnation action, but such properties must be considered as they existed at the time the proceedings were commenced, (*White v. Metropolitan West Side Elevated Railroad Co.* 154 Ill. 620; 6 A.L.R.2d 1203), and whether or not the cross petition is proper is a question of law which must be decided by the court. (6 A.L.R.2d 1207.) Under the facts and circumstances of this case, we are of the opinion that the properties in question are not so interrelated as to warrant their consideration as a single unit."

■■ The evidence in this case discloses that at the time of filing of the

petition for condemnation the only use which was being made of the property taken was for the storage of an assortment of horse racing equipment. For this reason alone it is apparent that the two parcels of land were not "inseparably connected in use." This brings the case clearly within the rule of *The City of Chicago* case, *supra,* and *White v. Metropolitan West Side Elevated Railroad Co., supra,* where the court commented, "But it is said, the two tracts of land were purchased to be used for one purpose, as one tract of land. Whatever may have been the intention or purpose in purchasing the two tracts of land can make no difference. The two tracts of land must be considered as they existed when the proceeding was instituted. At that time they were separated by a public street. They were in no manner connected, and never could be connected without the consent of the city, which may never be obtained. They were not used for any common purpose as one tract of land. Two tracts of land might be so connected and used as to constitute but one tract, and in such a case, in a proceeding to condemn a part, it would be proper to consider the damages to the whole. But this record presents no such case."

The foregoing aside, it does not appear that the use which was previously made of these properties "will necessarily and permanently injure" the property left in the hands of the defendants. Should the property be used again as a tavern it is apparent that parking is available, either upon the tavern property involved or the adjoining streets.

From the cases previously cited, it appears that the type of circumstance which the Supreme Court has considered to give rise to condemnation damages to separate tracts of property which are not condemned is where the condemnation of the separate tract which is taken effectively damages or destroys the principal use for which the tract (not taken) was designed. It is this special design which restricts the general utility of the property which remains after the separate tract is taken and meets the requirement for permanent damage. It is obvious that it may be a matter of convenience or profit that a landowner can operate nearby landholdings in conjunction with one another, but as was said in the *City of Chicago* case, *supra,* "It may well be that the joint ownership of these parcels is convenient or even beneficial, yet it cannot be said that the elimination of the free parking facilities will necessarily and permanently injure the store property." This rule has been applied by the court and its application is usually determined as a matter of law with the burden of proof falling upon the landowner. Any other rule would introduce a speculative aspect in virtually every suit in which the condemnee owns more than one piece of property and in which a conjunctive or mutual use is claimed.

In condemnation cases the landowner is given the benefit of the highest and best use theory for the establishing of an evaluation. This is primarily an artificial rule of judicial origin to assure fair compensation to the landowner. Another rule governing damages in condemnation suits has eliminated speculative aspects of valuation. The "damages" in a condemnation suit are not damages based upon fault. As is the case with every form of damages, short of punitive damages, the person receiving damages is limited by rules which, of necessity, eliminate speculative elements. Under the circumstances we can see no reason for abandoning the strict construction which the Supreme Court has placed upon the rule for damages to separate tracts which are claimed to be used in conjunction with lands taken.

■■ The matter of the condemnor's right to open and close the argument to the jury requires the granting of a new trial. The multitude of cases dealing with the subject indicate that the right to open and close the argument is a substantial one and the improper denial of this right may be reversible error. (See *Liptak v. Security Ben. Ass'n,* 350 Ill. 614, 183 N.E. 564.) For many years the matter of opening and closing was well settled. The rule was recognized without exception that the petitioner had the right to open and close the final argument. The primary reason given for the rule was that the burden of proof was upon the petitioner to establish damages to the land taken. See *McReynolds v. Burlington & O. R.R. Co.,* 106 Ill. 152 and *South Park Comr's v. Trustees of Schools,* 107 Ill. 489.

Recently, however, the Supreme Court had occasion to consider the right to open and close in *Department of Public Works and Bldgs. v. Dixon,* 37 Ill.2d 518, 229 N.E.2d 679. Carefully limiting its opinion, the court said, "We are of the opinion, however, that in a condemnation proceeding following the immediate vesting of title (quick-take) the condemnee should have the right to open and close argument." Accordingly, they reversed this court which had found to the contrary, and the Supreme Court declined to pass upon the *McReynolds* and *South Park* rules. Subsequently this court had occasion in *Department of Public Works and Bldgs.* for and on Behalf of *People v. Tinsley,* 120 Ill.App.2d 95, 256 N.E.2d 124, to decide that, "* * * if the landowner avails himself of the right to open and close, he must do so at all stages of the trial."

■■ In the instant case the defendants did not claim for themselves the right to open and close at the outset, but instead, the petitioner proceeded first in the presentation of evidence, and defendants made their motion to change the order of proceeding at the close of all of the evidence. In granting the defendants the right to open and close the argu-

ment the trial court declined to follow either the rule prior to *Dixon*, which was unchanged by *Dixon* or the rule of *Tinsley*. Therefore, it is not necessary for us to decide whether the former rule should be abandoned. It is sufficient to say that if the defendants had a right to open and close, that they waived this right by permitting the petitioner to open the presentation of evidence. We are aware that the *Tinsley* case had not been decided at the time of the trial in the instant case.

As we expressed in the case of *Department of Public Works and Bldgs. v. Dixon*, 68 Ill.App.2d 106, 215 N.E.2d 449, the Supreme Court has declared the law on this point, and the change in the law should be left to the Supreme Court. Particularly is this so in view of the recent refusal of the court to review the former rules in the *Dixon* case.

Judgment reversed and the cause remanded to the trial court with instructions to deny defendants cross-petition, and for a new trial in conformity with this opinion.

Reversed and remanded.

G. MORAN, P. J., and CREBS, J., concur.