THE DEPARTMENT OF BUSINESS AND ECONOMIC DEVELOPMENT, Petitioner-Appellee, *v.* ANDREW BRUMMEL, *et al.,* Defendants-Appellant.

(No. 70-288;

Second District—October 8, 1971.

*Rehearing denied November 18, 1971.*

Michael P. Edgerton, and Edward J. Farrell, of West Chicago, for appellant.

Frank S. Righeimer, Jr., Special Assistant Attorney General, of Chicago, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The defendants appeal from a judgment entered by the circuit court of DuPage County upon a jury verdict in a condemnation proceeding brought by the Department of Business and Economic Development of the State of Illinois. On December 2, 1968, the Department filed a petition to condemn a parcel of 45.06 acres (described in the petition as Parcel 106) to be used as part of the atomic accelerator laboratory to be developed by the United States government. Title was vested in the Department on January 14, 1969, pursuant to a quick take proceedings. On July 29, 1969, the defendants filed a cross-petition alleging damage to the remainder of their property, being 46.52 acres immediately to the east of and adjoining the parcel taken. The matter proceeded to trial on April 6, 1970 and the jury returned a verdict of $86,950 for the part taken and no damage to the remainder.

The defendant's property was virtually bisected by a railroad right-of-way owned by the Elgin, Joliet and Eastern Railroad that runs north and south through the entire property. Parcel 106, located on the west side of the railroad, is L shaped and has a frontage of approximately 565 feet on Batavia Road that bounds it to the north. Immediately to the east of and adjoining the railroad right-of-way there is a 25 foot wide easement granted to a gas pipeline company that also runs through the property completely north to south. That portion of the property to the east of the railroad has frontage of about 1600 feet on Batavia Road. Ferry Creek runs through the southwest portion of Parcel 106 and 4 to 5 acres of that parcel are within the creek. Effluent from a nearby sewerage plant is carried away by the creek.

Although the record is not clear on this point, it appears that the western-most part of Parcel 106 adjoined the limits of the Village of Weston. State Route 59 is located approximately ¼ of a mile to the east and the East-West tollway about 2 miles to the south. The municipalities of Batavia, West Chicago, Warrenville and Naperville are all located within a radius of 5 miles from the defendant's property.

Leon C. Kroning testified that he was the owner of the property and had acquired it in 1955. He resided on and operated his construction business from that part of his property located on the east side of the railroad and leased the west portion out, in his words, "to keep the weeds down and grow corn". Both portions were zoned R-2 (residential) in the County of DuPage but his business use preceded the zoning ordinance. Kroning stated that, prior to the taking, sewer and water facilities were available for his property from Weston but that the closest source thereafter was in West Chicago about 3¼ miles away. He also testified that

although no written plans had ever been prepared, he had "mental" plans for the development of his property.

George Broomis appeared as a valuation witness for the defendant. He testified that he was a real estate broker and developer and had been active in the real estate market in the Chicago area since 1956. It was his opinion that the highest and best use of the whole property was to hold it "for future development with the potential for multiple and industrial use" and that the fair cash market value as of December 2, 1968, was $425,639. He placed a valuation of $170,109.05 on the portion taken as part of the whole. His testimony and opinion as to damage to the remainder was stricken pursuant to a motion made by the Department. Only one other valuation witness appeared for the defendants and his entire testimony was stricken when it was disclosed that his method of evaluation was improper.

Edward M. Kyser, a senior member of the American Society of Appraisers, testified as an expert witness for the Department. It was his opinion that the highest and best use of the property was farming, to be held for future residential development and that the value of Parcel 106 was $81,000 or $1800 an acre as of December 2, 1968. Jay Fitts, a professional appraiser and consultant with extensive experience in the area, also testified for the petitioner. It was his opinion that the land should be held for future development and that Parcel 106 was worth $2175 an acre or $98,000. Harry Bierma, Jr. testified, pursuant to subpoena, that he made a cursory investigation of the property for the defendants' attorney and that in his opinion it was worth $2000 an acre.

The defendants contend that the trial court improperly excluded evidence of comparable sales offered by them and also erred in the admission of such sales offered by the petitioner. The two sales offered by the defendants and excluded by the trial court took place in the fall of 1968. They involved the sales of farm property, zoned R-2 in the County of DuPage, in parcels of 63 and 58 acres each located about 2½ miles from the subject property. Both sales were of property with extensive coverage on the East-West tollway and one bordered state route 59, a main arterial road in the area. In addition, those properties had immediate access to utilities and were worth, according to the offer of proof, approximately 20-30% more than the subject property.

■■ It was, of course, the legitimate function of the trial court to consider whether these other properties were sufficiently similar to the subject property to permit the jury to consider their sales as evidence of value. The determination whether a property is "sufficiently similar" is not capable of precise definition and must be made, in each case, within the wide discretion of the trial court. *Forest Preserve Dist. v. Harris Trust*

*& Savings Bank,* 108 Ill.App.2d 65, 74, 247 N.E.2d 188; *Illinois Building Authority v. Dembinsky,* 101 Ill.App.2d 59, 63, 242 N.E.2d 67. Although the trial court did not indicate the reason it excluded the other sales, it appears to us that the location of the properties was of considerable significance. Broomis testified that tollway frontage would, of itself, substantially increase the value of otherwise identical properties.

■■ On the other hand, the evidence of comporable sales offered by the petitioners concerned farm properties of similar size voluntarily sold within 1 to 3 years prior to the commencement of the suit. Although the properties were located from 1 to 3½ miles from the subject property, all were located on the perimeter or within the accelerator site. Under the circumstances, we feel that the rulings of the trial court relative to the offer of evidence on comparable sales were well within the limits of its reasonable discretion.

■■ As we have seen, the court granted the petitioner's motion to strike all of the testimony of the witness Broomis relative to damage to the remainder. Broomis had testified that in his opinion the remainder would be damaged because of the diminution in size of the whole parcel and the loss of proximity to municipal sewer and water facilities and that the damage would be $79,781. Although the loss of size of remaining lands has been held to be a proper element of damages, it is not an element *per se* but must be supported by evidence of direct and proximate damage caused by the diminution. *Waukegan Park Dist. v. First Nat. Bk.,* 22 Ill.2d 238, 246; *Trunkline Gas Co. v. O'Bryan,* 21 Ill.2d 95, 100; *County School Trustees v. Elliott,* 14 Ill.2d 440, 446. Here, the evidence showed that the owner, Kroning, used his property for two entirely different uses. Parcel 106, the part taken, was leased out as farmland and separated from the remainder by a railroad right-of-way and a 25 foot easement. The remainder was used by Kroning in the operation of his business and for his family residence. There was absolutely no evidence that the remainder was in any way damaged by the reduction in size of the entire tract and, indeed, there was evidence that the value of the remainder was actually enhanced by that fact.

■■ Both Broomis and Kroning testified as to the existence of sewer and water facilities in nearby Weston that could have serviced the property before the taking. Kyser testified, however, that the Weston sewage plant was not large enough to service any lands outside the then existing village limits. In any event, there is nothing in the record to show that the availability of Weston's facilities, if any there were, had been lost to the remainder as a result of the taking of Parcel 106. The evidence of damage to the remainder was far too vague and speculative to warrant consideration by the jury and the court quite properly struck it.

The defendants next maintain that the trial court was in error when it ordered them to open and close at all stages of the proceeding. It was well-settled in Illinois prior to 1957, when "quick-take" proceedings were authorized, that the condemnor in *eminent domain* cases, having the burden of proof, was entitled to open and close both as to the introduction of evidence and argument to the jury. The Supreme Court, however, in 1967 ruled that in condemnation proceedings after a quick-take, the condemnee had the right to open and close argument. *Department of Public Works and Buildings v. Dixon*, 37 Ill.2d 518, 521, 229 N.E.2d 679. ■■ A later case has ruled that if the condemnee avails himself of the right to open and close argument, he must open and close at all stages of the proceeding. *Department of Public Works and Buildings v. Tinsley*, 120 Ill.App.2d 95, 100, 256 N.E.2d 124. Here, however, the defendant did not avail himself of the right to open and close, but was ordered to do so by the trial court pursuant to the motion of the petitioner. It appears that the trial court made its ruling as a result of a misunderstanding of the *Tinsley* case (which had not been printed at that time). However, we are unable to see that the defendant was prejudiced in any way as a result of the sequence followed in the presentation of evidence. Although it is obviously true, as contended by the defendants, that their witnesses were the first to be subjected to cross-examination, we do not see how this left them in a "weakened" position caused by "adverse rulings". The defendants also maintain that they were denied their right to a fair and impartial trial by the prejudicial misconduct of counsel for the petitioners and the hostile attitude of the trial court towards their theory of the case. We have examined he record with considerable care and find that the conduct of counsel does indeed invite criticism. Although we recognize that a protracted trial will often fray the nerves of the participants we deplore the continued interruptions and sarcasms present in this case. We find no evidence, however, of any hostility by the court towards the defendants or their theory of the case or that the conduct of the petitioner's attorney prejudiced the jury.

■■ I has been stated many times that where the jury has viewed the property and the amount of compensation awarded is within the range of the evidence the verdict will not be disturbed unless it appears that it resulted from passion, prejudice or clear and palpable mistake. *City of Chicago v. Shell Oil Co.*, 29 Ill.2d 136, 138; *Dept. of Public Works and Bldgs. v. Christensen*, 25 Ill.2d 273, 276; *Dept. of Public Works and Bldgs. v. Dust*, 24 Ill.2d 119, 121. Here the admissible evidence relative to the value of the property ranged from $81,000 to $170,109.05. The jury viewed the property and returned an award within that range albeit close to the lowest valuation. We do not find that the jury was influenced

by passion or prejudice or that the award resulted from any clear or palpable mistake and therefore will not disturb the verdict.

■■ Finally, the defendants contend that the trial court erred in the instructions given to the jury. Petitioner's instruction No. 1, given over objection, started out as follows: "The State Agency in this case is entitled to the same fair and unprejudicial treatment as an individual would be under like circumstances  *  *  *" This instruction is based on Illinois Pattern Jury Instruction [I.P.I. No. 1.01] wherein the name of a corporate litigant is ordinarily inserted and is an exception to the general rule prohibiting the singling out of a particular party. The committee comments to the instruction point out the possible prejudice the jurors may have against a corporation as the basis for the rule and the same logic would not necessarily apply to an instrumentality of the State. However, we do not believe that the error, if any, in giving the instruction could be considered harmful to the defendants.

■■ Most of the defendants' instructions that were refused referred to damage to the remainder or other matters not relevant to the issues behe jury and were properly refused. An examination of all the instructions indicates that they were generally fair and impartial.

For the reasons stated, the judgment of the trial court will be affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.