THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* WILLIAM SHAW *et al.,* Defendants-Appellees.

Fifth District No. 74-408

Opinion filed February 9, 1976.—Rehearing denied April 26, 1976.

974

KARNS, P. J., concurring in part and dissenting in part.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., and Ronald C. Mottaz, Assistant Attorneys General, of counsel), for appellant.

Durr and Durr, of Edwardsville, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from an action of inverse condemnation. Pursuant to the mandate of a writ of mandamus issued July 30, 1971, the petitioner, the Department of Transportation of the State of Illinois, filed a condemnation petition on July 31, 1973. The parties disputed the purposes of this action. Defendants, William and Earlene Shaw, contended prior to trial that the question to be determined by the jury in the condemnation action was the amount of compensation due them for the taking of their access rights to Interstate 55 (U.S. Route 66) cut off by the closing of a township road. Defendants urged, as an alternative theory of recovery, that their counterclaim for damages to land not taken also presented a proper jury question. The petitioner, however, argued that only the question raised in defendants' counterclaim was a proper one for the jury. The judge denied petitioner's motion for summary judgment in the condemnation action and the cause was tried on the petition and counterclaim both for just compensation as a result

of taking defendants' rights of access and for damage to land not taken.

The jury returned a verdict finding that the defendants were due compensation in the amount of $48,000 as a result of the taking of their property rights of access. Judgment was entered on the verdict. Thereafter in a nonjury hearing, the court awarded attorneys' fees in the sum of $16,000 and judgment was entered thereon. Petitioner appeals from both judgments.

The following questions are presented for review: (1) whether the circuit court erred in denying petitioner's motion for summary judgment; (2) whether the circuit court committed error in ruling on certain motions relating to the pleadings; (3) whether the court erroneously admitted or improperly excluded certain evidence; (4) whether the court erred in instructing the jury; (5) whether the court improperly allowed attorneys' fees; and (6) if allowance of attorney's fees was proper, whether the amount awarded was excessive. Defendant filed in this court a motion to strike portions of the petitioner's brief and to dismiss the appeal. We denied the motion to dismiss but took the motion to strike with the case. The questions presented by this motion will be considered after recitation of the facts.

Prior to 1955, the only State highway serving what is now defendant's property was Illinois Route 157, now referred to as old Route U.S. 66. In 1955 the State acquired from the defendant's predecessor in title an acre of land upon which to construct a portion of the road and right of way of new U.S. Route 66. That portion of land was a triangular piece depicted below. Petitioner also acquired all direct access rights to the remaining 1.13 acres onto new U.S. Route 66. This acreage is located between old and new U.S. Route 66 (Interstate 55). The taking of this access right prohibited defendants from going directly onto new Route 66 from their 1.13-acre tract.

In addition to owning the tract between the highways defendants and their predecessors in title owned a 5-acre tract lying north of old U.S. Route 66. The exhibit below establishes the boundaries of both tracts as they have existed since 1955. It also shows the highway system since 1967. From 1955 to 1967 Township Road 123 crossed U.S. 66. Because of a change in policy regarding access to interstate highways, the township road was ordered closed on May 22, 1963, by the Director of Public Works. The township road was physically closed in January of 1967.

Defendants acquired title by quit-claim deed dated November 29, 1962 (land deeded to D. E. Orman, now Earlene Shaw), but did not record it until August 20, 1963. The deed specifically excluded the

rights of way transferred to the State in 1955 and any land located within a public roadway. The attorney representing the defendants in this purchase had also represented their predecessors in title at the time the access rights were conveyed to the State.

Prior to the physical closing of Township Road 123 it was possible to drive onto U.S. Route 66 from the defendants' 5-acre and 1.13-acre tracts by traveling about 300 feet on old U.S. 66, making a left turn onto the township road, and then going 150 feet to the intersection of

the township road and new U.S. Route 66. It was also possible to drive across new U.S. Route 66 and continue on the township road in the direction of Illinois Route 4. After the closing it became, and still is, necessary to travel about 2½ miles north or 1 mile south on old U.S. Route 66 to get onto new U.S. Route 66.

On April 27, 1967, the Shaws filed an action seeking to enjoin the Director of the Division of Highway and Robert E. Kronst, District Highway Engineer, from interfering with their rights of ingress onto and egress from new U.S. Route 66 by closing the township road at its intersection with new U.S. Route 66 (now interstate 55) without prior condemnation proceedings. The circuit court allowed the State's motion to dismiss. On appeal to the Illinois Supreme Court the State alleged that the Shaws had an adequate remedy at law in a mandamus action. On that basis the Supreme Court affirmed the dismissal. *Shaw v. Lorenz,* 42 Ill. 2d 246 (1969).

Thereafter on May 2, 1969, the defendants demanded by certified mail that the State institute eminent domain proceedings. The State did not act, so on May 26, 1969, the defendants filed a petition for writ of mandamus in the circuit court. On July 30, 1971, the court ordered that a writ of mandamus issue directing the State to institute eminent domain proceedings to take the Shaws' rights of access to Interstate 55 (new U.S. Route 66). The court also found that there had been a taking of the defendants' property rights of access, that no condemnation proceedings had been instituted to determine compensation for the destruction of these rights, and that the only question remaining for the jury was the value of the property rights taken.

The State's appeal taken from the judgment of the circuit court ordering that mandamus issue was dismissed on procedural grounds. *Shaw v. Kronst,* 9 Ill. App. 3d 807 (5th Dist. 1973).

At trial on the instant petition for condemnation and on defendant's counterclaim for damages to land not taken the following evidence was presented concerning the question of the amount of compensation or damages due the defendants.

Since 1955 the 5-acre tract has been used for farming and the 1.13-acre tract has not been used. Both parties agreed that because of Madison County's zoning and setback requirements, the 1.13-acre tract could not be used for constructing improvements of a commercial nature.

The testimony of defendant's first witness, Loren Burger, who was called under section 60 of the Civil Practice Act, established that the State of Illinois does not own the fee under old U.S. Route 66, the road

separating the two tracts owned by the defendants. Over objection Burger testified that it was his opinion that the access from the township Road onto new U.S. Route 66 included entry onto both the northbound and southbound lanes.

Defendants next called Tom Thebus, a real estate appraiser. Thebus explained that the value of access rights taken is the difference between the value of the land with and without these rights. In his opinion the highest and best use of the 5-acre tract was for commercial purposes because of its frontage, visibility, proximity, and access to new U.S. Route 66. The witness related that he had studied zoning change patterns and that all other property with access to highways had been rezoned for business use when requested. Thebus testified that with access rights intact, the defendants' property had a value of $115,000 as of July 31, 1973. Over petitioner's objection, he valued the tracts as a single unit. After the closing of the Township Road, the witness testified that there would be no commercial value and that the highest and best use of the land would be for a rural home site, the value of which would be $5,750. The damages, according to Thebus, were $109,250. In making this appraisal Thebus assumed that the defendants held title to the land under old U.S. Route 66 and that the defendants and the public would have the right of access onto new U.S. Route 66. He also assumed that access included the right to enter or leave both the north and southbound lanes of new U.S. Route 66. Were this not true, he stated, his evaluation would have been affected. Thebus further testified that if only the defendants themselves (and not their social guests and business invitees) had the right to use the Township Road for access to new U.S. Route 66, the land in question would be without commercial value.

On cross-examination petitioner was prohibited from asking Thebus the separate values of the two tracts. Petitioner was also precluded from inquiring whether other properties adjacent to defendants' property would also have commercial value. Thebus explained that he has not sold any property and has not been personally involved in any sales of real estate in the area. Over objection, the witness was allowed to testify regarding sales in the area, although he had no personal knowledge of them. He related that a 2-acre sale took place 1 mile north in December of 1967 for $24,750 and another sale of a 5-acre tract in the area surrounding appellees' property for $16,500 per acre in 1971. He also stated that another nearby 5.94-acre tract was sold for $75,000.

Petitioner's expert witness, Paul Lauschke, who is a licensed realtor, testified that rezoning for commercial purposes of land adjacent to highways is not automatic. He explained his experience in obtaining

rezoning of several properties in Madison County, but after objections, the witness was not allowed to offer his opinion regarding the possibility whether the property might be rezoned for commercial purposes. Lauschke testified that the highest and best use of the 5-acre tract was agricultural-residential and that the question of access rights had no bearing on this determination. He explained the dangers inherent in access at grade level. Over objection, petitioner's expert was allowed to render an opinion concerning the safety factors in making a right turn off new U.S. 66 at the access point.

The witness opined that as of July 31, 1975, the value of the 5-acre tract was $5,000 both before and after the closing of the township road. In his view lack of access had no effect on the value of the property. His opinion regarding the value of the 1-acre tract was $250 both before and after the closing of the Township Road. Witness Lauschke testified that at interstate interchanges, most land was rezoned commercial and that he had participated in the changes that were secured.

In closing argument, the defendants' attorney told the jury to consider whether the property in question could be rezoned and discussed the sales to which defendants' expert Thebus testified.

Defendants filed a motion for award of costs (under Ill. Rev. Stat. 1973, ch. 47, §9.8) which the court heard. Defendants' attorney testified that he represented the landowners and that because of the State's position in the matter and the uncertainty of recovery, he had entered into an agreement with the defendants that his fee would be on a one-third contingency or 40 percent if there were an appeal. In his opinion this fee arrangement was reasonable. He did not keep time records, however, and had no idea how many hours he had spent out of court working on this case. The trial of this case took 2½ days. Finally, the court took judicial notice of the Illinois Bar Associations' fee schedule which provides for $300 per day for trial work and $30 per hour for other work.

We initially consider the questions presented in defendants' motion to strike portions of petitioner's brief. In this motion the defendants assert that the issues raised in points 1, 3 and 6 of the petitioner's brief are *res judicata* because these issues were previously determined by a final order of the circuit court of Madison County.

Point 1 of the petitioner's brief raises the question of the proper date for valuing the property rights taken. Defendants claim that this issue is *res judicata* because the circuit court in its opinion in the prior mandamus case stated, "Property rights and their values are ascertained at the time a Petition in Condemnation is filed." This statement is dictum and not controlling in this case. The time for valuation of property rights

taken was not at issue in the prior mandamus proceeding in which the ultimate question to be determined was whether the State should be compelled to file a condemnation petition.

Point 3 of petitioner's brief raises the question whether there can be damages to land not taken where present unity of use and physical continuity to the part taken are lacking. This issue addresses questions raised by the defendants in their counterclaim for damages to land not taken and is accordingly properly before this court on appeal.

In Point 6 the petitioner raises the question whether the State's actions in closing the township road constituted a taking or material destruction of the defendants' property rights. We find that the petitioner is collaterally estopped from raising this question on this appeal. By deciding to issue the writ of mandamus in the prior action, the circuit court necessarily determined that valuable property rights of the defendants had been taken by the State. This decision was appealed by the State, but its appeal was dismissed on procedural grounds, thus rendering the decision of the circuit court final on the merits as to questions actually in issue and decided. (Ill. Rev. Stat. 1973, ch. 110A, §273; 2 Ill. L. & Pr. *Appeal and Error* §595 (1953).) Our dismissal of the prior appeal was equivalent to an affirmance (*Grossman v. Cohen*, 207 Ill. App. 156), leaving the judgment of the lower court in full force as an estoppel.

■■ Even though the appellate court did not consider the issues presented by the appeal from the issuance of the writ of mandamus, these issues have been conclusively determined by the circuit court. Notwithstanding the divergence of the causes of action—mandamus in the prior action, eminent domain here—the parties and subject matter of the two actions are the same. For this reason, we conclude that the determination of the circuit court in the prior action is binding here. (*Hoffman v. Hoffman*, 330 Ill. 413 (1928); *American National Bank & Trust Co. v. Zoning Board of Appeals*, 12 Ill. App. 3d 794 (1973); *Workmen's Lumber & Construction Co. v. Martin*, 121 Ill. App. 2d 352 (1970).) Cases cited by petitioner (*Brown v. Atwood*, 224 Ill. App. 77 (1922); *Reighley v. Continental Illinois National Bank & Trust Co.*, 323 Ill. App. 479 (1944)) in reply are inapposite. That the defendants in their counterclaim in this action urge an alternative theory of damages to land not taken has no bearing on the estoppel effects of the circuit court's judgment in the prior action. Accordingly, the motion to strike point 6 of petitioner's brief is granted. The motions to strike points 1 and 3 thereof are denied.

■■ Petitioner's first contention on appeal is that the circuit court erred in not granting its motion for summary judgment. We disagree.

A genuine issue regarding the question of the amount of damages, if any, for property rights taken is manifestly present in the instant case.

Secondly, the petitioner contends that the court erred in establishing at a pretrial conference the date of valuation of the property rights taken as the date of the filing of the condemnation petition. Specifically, the petitioner argues that the proper date of valuation is the date the township road was ordered closed, May 22, 1963, or, alternatively, the date the township road was physically closed, in January of 1967.

The general rule in Illinois is that value for the taking of real property rights is determined as of the date the condemnation petition is filed. (Ill. Rev. Stat. 1973, ch. 47, §9.7 (effective July 1, 1972); *Trustees of Schools of Township No. 37, v. First National Bank of Blue Island* (1971), 49 Ill. 2d 408; *City of Chicago v. Riley,* 16 Ill. 2d 257 (1959); *City of Chicago, v. McCausland,* 379 Ill. 602 (1942).) Were this not a case of "inverse condemnation," our discussion of this contention would end here, noting that the date of filing of the instant condemnation petition was July 31, 1973. Usually, the date of filing of the condemnation petition precedes the date of the taking and award of compensation or damages. Because of the procedural posture of this case and the length of time between the physical obstruction of defendants' rights of ingress and egress onto new U.S. Route 66 and the subsequent filing date of the instant petition, we believe the issue presented merits further discussion. Our research shows this question to be one of first impression in Illinois.

A review of the cases of this and other jurisdictions shows that the theory of inverse condemnation is quite muddled. (See generally Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility,* 1966 Wis. L. Rev. 3; Beuscher, *Some Tentative Notes on the Integration of Police Power and Eminent Domain by the Courts: So-called Inverse or Reverse Condemnation,* 1968 Urban L. Ann. 1.) The difficulty stems from the language of State constitutions (including Illinois'; Ill. Const. art. 1, §15) which provide that compensation must be paid for "property" that has been "taken" or that has been "taken or damaged" for public use. Courts attempting to explain a recovery under these provisions may concentrate on an analysis of the property interest that has allegedly been taken, or may explore instead the question of whether a taking, or a taking or damaging has in fact occurred. Outcomes differ according to the nature of the judicial rationale. See D. Mandelker, Managing Our Urban Environment, 618-624 (2d ed. 1971).

Inverse condemnation cases generally fall into two categories. In one category part of the landowner's land has been taken and the action is brought to recover damages to the land not taken that the property

owner alleges have not been compensated in the original and formal eminent domain proceeding. (See, *e.g.*, *Priestly v. State*, 23 N.Y. 2d 152, 295 N.Y.S.2d 659, 242 N.E.2d 827 (1968).) Inverse condemnation may also be used to assert a claim for consequential damages, when no land has been formally and physically taken by the condemning authority, but the property owner alleges that he has suffered compensable damages resulting from the taking of certain of the bundle of property rights comprising his ownership. (Compare *United States v. Certain Parcels of Land*, 252 F. Supp. 319 (W.D. Mich. 1966) with *Thomsen v. State*, 284 Minn. 468, 170 N.W. 2d 575 (1969); *Bacich v. Board of Control*, 23 Cal. 2d 343, 144 P.2d 818 (1943).) The instant case has elements of both types of cases.

■■ The primary reason behind the general rule in Illinois that the date of valuation for taking real property is the date the condemnation petition is filed is that this date prohibits the real property owner from being unjustly enriched or unfairly penalized. The rule sets determination of value at the time of the injury, which has been statutorily determined in Illinois to be the date of commencement of eminent domain proceedings (*i.e.*, the date of filing the condemnation petition) rather than the date of legal transfer of the property interests to the condemning authority. As applied to at least one of the inverse condemnation situations above, however, the reasons behind the general rule urge a different valuation date. The time of the injury in the first type above is, under the rationale adopted in Illinois, apparently the date of commencement of the original, albeit assertedly inadequate, condemnation action. In the second type, the date of the injury suffered is, under the same rationale, the date that a proper condemnation petition should have been filed. This date, nevertheless, is in many cases incapable of easy determination, and would needlessly place the courts in the position of scrutinizing the internal decision-making process of the condemning authority. We note, of course, that prior to the filing of a petition, condemnation plans are always subject to change. In addition, we are of the opinion the rationale in determining the date of valuation in the normal condemnation situation does not hold in cases where, as here, the property owner is forced to bring legal action to obtain payment for the taking of his property rights. Because the date of the injury in inverse condemnation situations is not necessarily the date the condemnation petition was filed, valuation at the date of filing might have the effect of unjustly enriching the property owner for the condemning authority's unauthorized acts, if, as in this case, the value of the property rights were appreciating, or of unfairly penalizing him, if property rights were depreciating, since regardless of type of market

or inverse condemnation situation, the date of filing of a proper and complete condemnation petition would necessarily follow the date of the purportedly unauthorized or incomplete taking. Consequently, we believe that valuation of the defendants' property rights at the date of the filing of the condemnation petition works an injustice in situations where, as in the present case, the property owner must bring action to force the State to compensate him for the taking of his property rights.

We note that in the usual condemnation situation the condemning authority already has great latitude in determining when to file a condemnation petition. In a market in which property values are appreciating it is usually to a condemning authority's advantage to file the condemnation petition early, even years before the property is actually used for public purposes. In a depreciating market, however, it is often advantageous to the condemning authority to file as late as possible, that is, just prior to the commencement of construction of the public project. In either type of market it is sometimes beneficial to the condemning authority to announce a proposal for the public project long before commencement of eminent domain proceedings in the hope that because of the announcement, property values in the area to be taken will depreciate. (But see Ill. Rev. Stat. 1973, ch. 47, §9.7.) In other instances, however, property values increase as a result of the announcement of the proposed public project. We thus decline to allow the State the even greater discretion in exercising the power of eminent domain that was permitted in the instant case.

Nonetheless, we do not agree with either of the petitioner's contentions that the date of valuation in the instant case should be the date of the order closing the township road, or, in the alternative, should be the date of the erection of the barricades that physically closed the township road. To set the date of valuation at either date would in many cases unjustly penalize a private property owner for the State's failure to file a timely petition for condemnation. It would also allow the State the additional option, if land values were appreciating, to take property rights immediately without first commencing formal proceedings to do so. Moreover, the State's decision to exercise such an option would force the private property owner instead of the State, to initiate legal proceedings. Once the State has in fact taken private property rights without first commencing eminent domain proceedings to pay for them, we believe a wrong has been committed. Consequently, we adhere to a tort theory of inverse condemnation in situations where, as in the instant case, the private property owner was obliged to initiate proceedings to force the State to pay for property rights already taken.

In this case the actual (*de facto*) taking of property rights occurred

almost 6 years before the filing of the petition for condemnation. If land value had depreciated during this time, the defendant property owners would certainly be contesting the valuation date established by the circuit court as an unjust penalty upon them resulting from the State's unauthorized taking of their property rights and delays thereafter. Because, however, land values have appreciated during the period in question, the defendants seek the increased value of their access rights. In an inverse condemnation case it is the property owner who must bring an action to force the condemning authority to take his property legally and to pay him for the taking. That the property owner can bring such an action within the period of the statute of limitations properly allows the owner some leeway to determine when he shall seek redress for wrongs or unauthorized acts allegedly committed. Thus, in this present inverse condemnation situation, we believe that the landowner should have discretion to determine the valuation date of his property allegedly taken unlawfully or without authority insofar as he can delay filing the appropriate action within the period of the statute of limitations. To allow the State to further delay the "inverse condemnation" proceedings and thus determine the valuation date is unwarranted because the additional delay could just as easily operate to penalize the property owner unfairly as to enrich him unjustly. Consequently, we are of the opinion that the proper date of valuation in this inverse condemnation situation was the date of commencement of the proper steps to initiate "inverse condemnation" proceedings, which in this case was accomplished by demanding that the State institute eminent domain proceedings as a prelude to filing a petition for writ of mandamus.

Notwithstanding the filing and ultimate dismissal of the defendant's original action in equity seeking to enjoin the Director of Highways and the district highway engineer from interfering with their access rights (*Shaw v. Lorenz,* 42 Ill. 2d 246), we have concluded that the date of valuation of the property rights taken by petitioner in the present case is rightly the date of the demand letter (May 2, 1969) requesting petitioner to institute eminent domain proceedings to condemn defendant's property rights. Accordingly, we find that the circuit court erred in establishing the valuation date as July 31, 1973, the date of the filing of the condemnation petition. For this reason, the judgment of the circuit court of Madison County is reversed and the case remanded for a new trial.

We nevertheless consider the petitioner's other contentions to prevent these questions from arising again in the event of retrial.

The petitioner maintains that the trial court ruled incorrectly on

certain evidentiary matters. In particular, the petitioner urges that the court erred in (1) refusing to admit into evidence petitioner's Exhibit No. 2, the order closing the township road; (2) improperly admitting the hearsay testimony of defendant's expert witness Thebus regarding comparable sales; (3) improperly admitting Thebus' opinion concerning the probability of rezoning of the 5-acre tract for reason of a lack of a factual foundation of his opinion and (4) in refusing to allow petitioner's expert Lauschke to testify regarding the difficulty and danger in making a right turn off new U.S. Route 66 and concerning the economic status of filling stations at the time the condemnation suit was filed.

■■ We believe that the order closing the township road was irrelevant to the question of damages to land not taken under defendant's counterclaim as well as to the issue of the amount of compensation due the defendants in the petitioner's condemnation action. The time of the injury to land not taken under the first theory and the time of the taking of access rights under the second theory is the same in each case; that is, January, 1967, when the physical closing of the township road occurred. The fact that the township road was ordered closed in 1963 is irrelevant to the question of inverse liability, let alone the issue of damages or amount of compensation. The 1963 order affected only the rights of the public and had no bearing on defendant's right of ingress and egress (across the road and onto U.S. Route 66) for themselves, their social guests, and business invitees. Furthermore, the order will be in no way relevant to the question of the highest and best use in 1969 of the defendant's property. Consequently, we are of the opinion that the court did not err in refusing to admit petitioner's Exhibit No. 2 into evidence.

■■ Nor do we believe the court erred in refusing to allow petitioner's expert Lauschke to testify regarding the number of closings of noninterstate filling stations at the time of the filing of the condemnation suit. The closing of noninterstate filling stations because of lack of business is irrelevant to the question of damages or amount of compensation presented here. In addition, any testimony regarding fair market value must upon retrial have as its reference point the date of valuation as heretofore determined.

■■ We decline to consider petitioner's contention that the court erred in refusing to allow Lauschke to testify regarding the dangers of making a right turn off of new U.S. Route 66. Petitioner's attorney failed to make an offer of proof to explain the relevancy of his question after the court sustained a general objection to Lauschke's testimony at issue and thus we deem the exclusion of the evidence proper. *Gaddie v. Whittaker*

(1931), 344 Ill. 149; *Village of Glen Ellyn v. Lanis* (1973), 10 Ill. App. 3d 243; *Harris v. Algonquin Ready Mix, Inc.* (1973), 13 Ill. App. 3d 559.

■■ As to petitioner's allegation that the court improperly admitted the defendants' expert witness Thebus' hearsay testimony of comparable sales, we nevertheless find merit. Evidence of three comparable sales given by Thebus was improperly admitted because the record shows that he had only hearsay, not actual, knowledge of these sales. *Rendl v. Anderson* (1968), 103 Ill. App. 2d 255; see *Sanitary District v. Boening* (1915), 267 Ill. 118.

■■ Finally, petitioner contends that the court improperly admitted expert Thebus' opinion concerning the probability of rezoning of the 5-acre tract because the expert failed to establish a factual basis for his opinion. Our review of the record does not sustain petitioner's contention regarding the lack of foundation for the opinion, and at no time did petitioner object to the opinion on these or any other grounds. Accordingly, we would deem this point waived. We note that petitioner's expert Lauschke, who had served on a zoning board and who had actual experience with rezoning in Madison County, was prohibited from stating his opinion regarding the "impossibility" of a rezoning. In sustaining an objection to petitioner's question requesting an opinion on the possibility of a rezoning, the trial judge apparently viewed the requested opinion as speculative in nature and improper evidence of a reasonable *probability* of a change in zoning. If this in fact were the grounds for sustaining defendant's objection we would be inclined to agree with the circuit court's reasoning. Accordingly, we would find no error in the trial court's ruling in this regard. At retrial, petitioner should nonetheless be allowed to present expert or other testimony regarding the probability of a rezoning of the defendants' property in question.

■■ The next matter warranting our consideration concerns the questions raised with respect to defendant's counterclaim for damages to land not taken. Defendants' counterclaim represents an alternative theory of recovery. We have reviewed the jury instructions given and find them adequate to charge the jury on this point. We note, of course, that the jury did not award the verdict on the basis of this theory of compensation. If upon retrial the jury were to render a verdict based on this theory, myriad problems would result. The issue of damages to land not taken was not directly determined in the prior mandamus action. The State would, therefore, not be collaterally estopped from going behind the circuit court's order in the mandamus case, since the damages theory is not based upon a *de facto* taking of defendants' access rights. In this event, the questions presented in Point 3 of the petitioner's brief would need to be addressed. Although we would be inclined to limit retrial to the question of the amount of compensation

due the defendants for the taking of their access rights, we leave it to the circuit court on remand to entertain or not a motion to withdraw the defendants' counterclaim.

The final question presented is the propriety of the award of attorneys' fees in this case. Defendants filed a motion for award of costs for "reasonable attorneys' fees actually incurred by the property owner in these proceedings." After hearing testimony of the defendants' attorney, the court entered judgment of $16,000 for "reasonable attorney's fees."

Defendants' motion was based on the provisions of section 9.8 of the Eminent Domain Act, which are set forth below:

"Where the State of Illinois, a political subdivision of the State or a municipality is required by a court to initiate condemnation proceedings for the *actual physical taking of real property*, the court rendering judgment for the property owner and awarding just compensation for such taking shall determine and award or allow to such property owner, as part of such judgment or award, such further sums, as will in the opinion of the court, reimburse such property owner for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees actually incurred by the property owner in such proceedings." Ill. Rev. Stat. 1973, ch. 47, §9.8 (effective July 1, 1972).

Since this cause has not yet proceeded to final judgment, we allow the defendants the benefit of this statute, even though the mandamus requiring the institution of condemnation proceedings was issued prior to the effective date of the statute.

■■ In issuing the writ of mandamus in this case, the circuit court found a *de facto* (rather than a *de jure*) taking of defendants' real property rights of access that resulted from the blocking of the township road by the petitioner in January, 1967. We believe that this taking constitutes an "actual, physical (to be distinguished from a legal) taking" of a real property interest, in particular, an incorporeal hereditament. The incorporeal hereditament taken here is the Shaws' right of access to go onto new U.S. Route 66 (Interstate 55) via the township road. This right of access is an easement appurtenant to the abutting privately owned 6.13-acre tract attaching to the specific land occupied by the abutting highway as the serviant estate. (See *State ex rel. Herman v. Wilson*, 4 Ariz. App. 420, 420 P.2d 992 (1966), *vacated on appeal from remand*, 103 Ariz. 194, 438 P.2d 760 (1968).) This right is to be distinguished from the divisible right of access to go directly from the land between old and new U.S. Route 66 (the 1.13-acre tract) onto new Route 66, which was taken and for which just compensation was paid in the 1955 eminent domain proceedings. Because of setback requirements, the access right taken in 1955, though also an easement ap-

purtenant benefiting a portion of the now 6.13-acre tract, was commercially useless. It is the access right via the township road that then was and now is substantial and suitable for commercial purposes and which is properly an interest in real property within the language of the above statute. See Van Alstyne, *Just Compensation of Intangible Detriment: Criteria for Legislative Modifications in California*, 16 U.C.L.A. L. Rev. 491 (1969).

The right of access to new U.S. Route 66 remaining after appropriation of land for the right of way and of the limited right of access in 1955 illustrates the proposition that suitability may well be imposed upon what is indirect rather than direct access. Although this is certainly not the usual situation, we find our result consistent with our statutory definition of access, which is stated as follows:

> "❋ ❋ ❋ every owner or occupant of property abutting upon any State highway shall have reasonable means of ingress from and egress to the State highway consistent with the use being made of such property and not inconsistent with public safety or with the proper construction and maintenance of the State highway for purposes of travel, drainage, and other appropriate public use." Ill. Rev. Stat. 1973, ch. 121, §4—210.

We also find our result consistent with the recent case of *Department of Public Works & Buildings v. Wilson & Co.* (1974), 22 Ill. App. 3d 302, and the decision in *Department of Public Works & Buildings v. Mabee* (1961), 22 Ill. 2d 202, the case upon which *Wilson* relies. As in *Wilson*, the public improvement here (*i.e.*, the closing of the township road) materially destroyed the property owner's means of access to the highway abutting on his property. Unlike *Wilson*, the condemning authority here did not construct a frontage road allowing the owner immediate, though indirect access to the highway.

■■ In *Mabee* the Illinois Supreme Court set forth the following statement of law.

> "It is a well-established rule in this State that the right of access to an existing public street or highway is a valuable property right which cannot be taken away or materially impaired without just compensation. ❋ ❋ ❋ *This rule has been applied where a public improvement has completely ❋ ❋ ❋ or materially ❋ ❋ ❋ destroyed a property owner's means of access to the whole highway ❋ ❋ ❋.* The rule cannot be applied, however, where the property owner's free and direct access to the lane of traffic abutting on his property has not been taken or impaired. Once on the highway he is in the same position and subject to the same police-power regulations as every

other member of the traveling public." (Emphasis added.) 22 Ill. 2d 202, 205.

Despite some language above implying that indirect access might not be a compensable property interest, we find the instant factual situation well within the above stated rule and at the same time distinguishable from the circumstances present in *Mabee*.

In *Mabee*, the State constructed an insurmountable median which prevented westbound motorists from immediate access to defendant's service station. Defendant's customers could still turn into the station from the eastbound lane. No taking or damaging of a property interest was found. The court held that the diminution in the value of the land or the loss of business occasioned by the one-way traffic regulation that diverted a portion of the flow of traffic from in front of the defendant's premises was the result of the proper exercise of the police power.

In the instant case a material destruction of access to the whole, not half, of the abutting highway occurred when the township road was closed. Having determined that an "actual, physical taking of real property" has occurred, we now consider whether the award of $16,000 attorneys' fees is supported by the evidence.

■■ We have concluded that the intent of the above section (9.8) of the Eminent Domain Act is to reimburse defendants for expenses actually incurred in the condemnation proceedings that the State was required to initiate. These expenses include attorneys' fees which are in "the opinion of the court" reasonable. As to the reasonableness of the award of attorneys' fees in the instant case, the trial court had opportunity to consider the time and effort involved, the amounts of money awarded as just compensation, the experience and skill of counsel, the wide dispute in legal theory, and the difficulty and novelty of the case. Counsel for the defendants testified regarding his financial arrangements with clients, including the contingent fee provision of their agreement. The court also considered the language of the recommended minimum fee schedule published in September 1968 by the Illinois Bar Association:

> "This [Eminent Domain] is a proceeding where in every instance the use of a contingent fee should be seriously considered. If the condemning authority has made an offer, then no matter how difficult the case or brilliant the battle, it will be difficult to collect the hourly rate if no additional compensation is recovered. On the other hand, if the battle is won, the client will remember clearly the quoted hourly charge. A fee based on a percentage of all compensation received over and above the offer will usually be the most fair to the client and the lawyer. This percentage

may vary in any amount up to 50%, depending upon the amount involved and the difficulty of the matter." Manual on Fees and Charges Including Suggested Minimum Fee Schedule of the Illinois State Bar Association 39 (September 1968).

In the case at bar, the condemning authority made no offer whatsoever. Insofar as the $16,000 award of attorneys' fees represents one-third of the total award of compensation, we would be inclined to find the circuit court's award of attorneys' fees reasonable under the circumstances.

For all of the foregoing reasons, we reverse the judgments of the Circuit Court of Madison County and remand the cause for a new trial on the issue of the amount of just compensation or damages due the defendants for the taking of their property rights of access and for a redetermination of attorneys' fees not inconsistent with this opinion.

Judgments reversed and remanded.

EBERSPACHER, J., concurs.

Mr. PRESIDING JUSTICE KARNS, concurring in part, dissenting in part:

I concur in the decision of the court reversing the judgments of the trial court but must respectfully dissent from that portion of the majority opinion which discusses the measure of damages to be applied upon remand of this cause.

The order of the Circuit Court of Madison County directing the issuance of the writ of mandamus necessarily determined that the closing of the township road resulted in the taking or damaging of some property rights of the appellees. I agree with the majority that our dismissal of the Department's appeal from this order was an affirmance of the circuit court's judgment and that a redetermination of this question is now precluded; however, while the fact of some damage to Shaws' access rights has been conclusively determined, the proper determination of the amount of damage was not decided in the prior action. Were it not necessary to apply the established rules of *res adjudicata* and collateral estoppel on this appeal, I would hold that the closing of the township road resulted in no compensable injury to the Shaws.

The landowners' predecessors in title sold to the Department of Transportation a 1-acre tract of land in March, 1955. At the same time and as part of this dedication all direct access rights from the 1.13-acre tract abutting new U.S. Route 66, as depicted by the plat reproduced in the majority opinion, were released and extinguished. The consideration for this conveyance and release was $31,250. This 1.13-acre tract

was and is separated from the 5-acre tract by old U.S. Route 66. These two tracts were acquired by appellees' predecessors in title by separate conveyances on different dates.

Notwithstanding the separate and distinct nature of these two parcels, the landowners' appraiser testified that he considered them as one parcel for valuation purposes, although he admitted the smaller tract had no value for commercial purposes considered separate and apart from the larger 5-acre tract. In fact, neither parcel was being used for commercial purposes in March of 1955, nor has either parcel been used for other than agricultural or residential purposes since that time.

The landowners' appraiser considered that the highest and best use of the 5-acre tract was for commercial purposes. This would require a zoning change. The damage to the landowners would then result from the inability of motorists driving on new U.S. Route 66, now Interstate 55, to have easy and convenient access to this property over the township road.

I would emphasize that direct access to new U.S. Route 66, or Interstate 55, never existed from the 5-tract nor was the 5-acre tract ever contiguous to the 1.13-acre tract nor did it abut the township road.

I would limit the Shaws' damages, if any, to the taking of their access from the southwest corner of the 1.13-acre tract onto the township road, and this only because I consider the fact of some damage conclusively determined by our dismissal of the prior appeal.

There was never physical contiguity nor contiguity of use between the two parcels. While I do not consider that the rules applicable to damage to remainder are particularly helpful in situations where there is damage to access but no physical taking of property, as compensable injury to access necessarily results in damage to the entire tract, certain of these rules are helpful in determining what is not a compensable loss. Loss of access to the smaller tract could never result in damage to property not taken, the 5-acre tract, as there must be physical contiguity between the part taken and the remainder. (*City of Chicago v. Equitable Life Assurance Society,* 8 Ill. 2d 341, 134 N.E.2d 296 (1956); *Department of Public Works & Buildings v. Hanna,* 4 Ill. App. 3d 884, 282 N.E.2d 269 (1971).) The separation of the two parcels by old route U.S. 66 would foreclose damage to the 5-acre tract by virtue of any loss of access to the 1.13-acre tract. Additionally, the cases require a unity of use of the parcels involved. While neither parcel had been used for commercial purposes since March, 1955, the expert appraisal testimony was that only the larger tract would have commercial value; there could never be a unity of use of the two parcels. *Department of Business & Economic Development v. Brummel,* 1 Ill. App. 3d 683, 274 N.E.2d 605 (1971).

A landowner's right to compensation for loss of access has been exhaustively reviewed in the recent case of *Department of Public Works & Buildings v. Wilson & Co.*, 62 Ill. 2d 131, 340 N.E.2d 12 (1976). The effect of this decision is to limit recovery to cases of complete loss of direct access to abutting streets and highways. The court emphasized that the closing of streets and roads resulting in inconvenience and circuitry of travel is not a compensable loss and that a property owner has no property right in the continued flow of traffic along the street or highway abutting his property. The court stated:

> "If, however, there is no physical disturbance of the right of access *vis-a-vis* the abutting highway, then any damages which may result to the property owner as a consequence of a change in the use of the highway by the public are *damnum absque injuria* even though such damages may be very substantial. This distinction can be illustrated by a rather common situation which occurs when a limited-access highway is constructed in a new location leaving a property owner's place of business still fronting as it was before on the old highway which has become a secondary road or access road for the new highway. In such a case there can be no question that serious economic consequences may result to the property owner, and it is quite possible that the highest and best use of his property would be changed. However, the fact remains that the existing access to the abutting roadway is unaffected. It is only the nature of the public's use of the highway which has changed. The consequential damages which occur do not result from any taking of material impairment of existing access rights but solely from the State's exercise of its police power to regulate and control traffic on the highways." 62 Ill. 2d 131, 141.

Here, the 5-acre tract abutted old Route U.S. 66 and the landowners had direct access only to this highway. After the closing of the township road, the landowner still has direct access onto old U.S. Route 66 which remains as a frontage road. The 5-acre tract did not abut the township road. While it was convenient for the Shaws to use the township road for entry onto new U.S. Route 66, this use was undoubtedly no less convenient to other nearby property owners and the public generally. The Shaws' inconvenience is thereby no different than that of other members of the public.

While I agree that this decision must be reversed, on retrial I would limit the determination of damages to loss of access to the 1.13-acre tract occasioned by the closing of the township road. The view I take of this case makes it unnecessary for me to discuss other issues discussed in the majority opinion.