THE CITY OF ROCK ISLAND, Plaintiff-Appellee, *v.* MOLINE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellants.

Third District   No. 77-45

Opinion filed October 20, 1977.

John W. Robertson, of Bozeman, Neighbour, Patton & Noe, of Moline, for appellants.

Bernard C. Gillman, of Rock Island (Dorothea O'Dean, of counsel), for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The eminent domain proceeding in this cause was instituted by petitioner, City of Rock Island, on June 12, 1975, for the purpose of acquiring for urban redevelopment, certain real estate owned by defendants (Moline National Bank, as trustee, Mel Pettis, Cherry Pettis and Mabel Bell). Defendants thereafter filed a motion to dismiss and a counterclaim and prayed that petitioner be ordered to commence condemnation proceedings against the property in question on the basis of having the property valued as of September 1972. The trial court denied defendants' motion to dismiss and on petitioner's motion, also dismissed defendants' counterclaim.

Prior to the trial by jury of the instant cause, the trial court granted petitioner's motion to limit defendants' valuation evidence at the trial to evidence of the fair cash market value of the property on the date the condemnation petition was filed. At the trial, the parties stipulated that the value of the property was only $15,000 on the date the petition to condemn was filed. The court directed a verdict in favor of petitioner for damages in the amount of $15,000, and entered judgment on that verdict.

On appeal in this court, defendants contend, (1), that the trial court erred in restricting the valuation evidence at the trial to evidence of the fair market value of the property on the date the condemnation petition was filed and, (2), that denial of defendants' motion to dismiss and dismissal of defendants' counterclaim violated defendants' State and Federal constitutional rights to just compensation for property taken for public purposes.

We have noted that the petition to condemn was filed on June 12, 1975. Defendants' motion, which was filed on October 21, 1975, and the counterclaim (filed at that time) both alleged that the petitioner had taken numerous actions which proximately damaged and destroyed the commercial value of defendants' property, and that petitioner City of Rock Island, had induced defendants to believe that defendants would be compensated for the property at the 1972 value of the property. Defendants' counterclaim prayed that petitioner be directed to commence condemnation proceedings based on the valuation in September 1972, but, as we have noted, defendants' motion to dismiss was denied and the counterclaim was dismissed.

On May 20, 1976, petitioner City of Rock Island moved, in limine, for an order pursuant to Supreme Court Rule 218 (Ill. Rev. Stat. 1975, ch. 110A, par. 218), prohibiting defendants from introducing evidence at the trial of the fair cash market value of the property involved on any date other than on June 12, 1975, the date of the filing of the petition for condemnation. The court granted that motion. At the trial, the only valuation evidence admitted was the stipulation by petitioner and defendants that on the date of filing of the petition, the defendants'

property had a fair market value of only $15,000. As we have noted, the court directed a verdict for such sum to the jury and entered judgment on the jury's verdict.

On the basis of the agreed statement of facts which was submitted by the parties, pursuant to Supreme Court Rule 323(d) (Ill. Rev. Stat. 1975, ch. 110A, par. 323(d)), we note that defendants also tendered a written offer of proof as party of the jury trial, which was rejected by the trial court. Defendants' offer of proof would have shown that property owned by defendants was improved with a two-story brick structure with three commercial rental properties on the first floor and eight residential apartments on the second floor. It is also shown, from such written offer of proof, that in 1969 and 1970, the City of Rock Island formulated and adopted an urban renewal plan for the neighborhood in which defendants' property was located, and that in 1970, defendants' building was fully occupied. Defendants thereby offered to prove that, in 1971, personnel representing the city informed defendants' tenants that the building was designated for future acquisition and destruction and that relocation assistance would be made available to the tenants.

By September 1972 defendants' building, due to the relocation, death and going out of business of tenants, had only one commercial tenant remaining and one residential tenant; and defendants were unable to obtain replacement tenants, and, as a result, in September 1972, defendants' closed the building. It also appears that during the time the occupancy of defendants' building was declining, street and sewer work in the area closed off streets around the building for some periods of time, and that, in the summer of 1972, the city acquired and demolished some properties in the neighborhood. Defendants' offer of proof included a series of appraisals of defendants' property, some made by the City of Rock Island appraisers, during the period 1970 to 1975. Those appraisals included a value of $80,000 in 1970, as contrasted to the stipulated value of $15,000 on the date the petition to condemn was filed.

■■■ Defendants first contend that the trial court erred in restricting the valuation evidence at the trial to evidence of the fair market value of the subject property on the date the condemnation petition was filed. Section 9.7 of the Eminent Domain Act (Ill. Rev. Stat. 1975, ch. 47, par. 9.7) provides:

> "Except as to property designated as possessing a special use, the fair cash market value of property in a proceeding in eminent domain shall be the amount of money which a purchaser, willing but not obligated to buy the property, would pay to an owner willing but not obliged to sell in a voluntary sale, which such amount of money shall be determined and ascertained as of the date of filing the petition to condemn. Provided, that in the

condemnation of property for a public improvement there shall be excluded from such amount of money any appreciation in value proximately caused by such improvement, and any depreciation in value proximately caused by such improvement. Provided further, that such appreciation or depreciation shall not be excluded where property is condemned for a separate project conceived independently of and subsequent to the original project."

Petitioner argues that this provision is merely a codification of the law existing prior to the enactment of the statute, which established value of property taken in condemnation as being determined as of the date of the filing of the petition for condemnation. (*Trustees of Schools v. First National Bank* (1971), 49 Ill. 2d 408, 411, 274 N.E.2d 56.) Such construction of section 9.7 would render meaningless the first proviso of that section. We also note that section 9.7 of the Eminent Domain Act was enacted into law by section 1 of Public Act 77-1904, and that section 2 of that Act provided:

"Whereas the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 requires that all States shall be in compliance with the provisions of said Federal Act by July 1, 1972; and whereas if Illinois is not in compliance by July 1, 1972 the Federal Government will be required to withhold approval of any program or project which will result in the acquisition of real property, now therefore, an emergency exists and this Act shall become law on July 1, 1972."

The Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, provides, with reference to the valuation to be applied in an eminent domain proceeding, in title III, section 301(3) (42 U.S.C.A. §4651(3)), as follows:

"Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property."

While it is clear that this Federal provision establishes only policy guidelines and creates no rights or liabilities (42 U.S.C.A. §4602; *Department of Transportation v. Zabel* (3d Dist. 1977), 47 Ill. App. 3d 1049, 362 N.E.2d 687), we conclude that section 9.7 of the Eminent Domain Act did establish rights and liabilities in Illinois in accordance with the policies expressed in the Federal act. We believe that under section 9.7, defendants in the instant case should have been allowed to establish the amount of depreciation in the value of their property which

was proximately caused by the public improvement for which their property was taken. Inasmuch as depreciation in value may be established by comparisons of the value of property over a period of time, we determine that the trial court's order limiting defendants' valuation evidence at trial to evidence of the fair market value of the property at the time the condemnation petition was filed was overbroad, and erroneous.

■■ Defendants additionally argue, as we have noted, that the denial of defendants' motion to dismiss and the dismissal of defendants' counterclaim violated the State and Federal constitutional rights of defendants to just compensation for property taken for public purposes. Since this court's determination of the first issue raised on this appeal will permit defendants to be allowed to establish depreciation in the value of their property proximately caused by petitioner's project, and since the effect of defendants' counterclaim would have been to recognize the depreciation in defendants' property due to the project, our determination of the prior issue presumably would achieve objectives sought by defendants. We must note, however, that the Illinois Supreme Court stated in *City of Chicago v. Loitz* (1975), 61 Ill. 2d 92, 97, 329 N.E.2d 208:

> "Courts are not in complete agreement as to the circumstances under which Federal and State constitutional provisions obligated a condemning authority to compensate the owners of property so affected. The general rule followed in Illinois and most other jurisdictions is that mere planning or plotting in anticipation of a public improvement does not constitute a 'taking' or damaging of the property affected."

Under the established Illinois precedent then, we are compelled to conclude that defendants contentions are not supported on constitutional grounds.

Defendants additionally urge, on this appeal, that the actions by petitioner which resulted in the depreciation of defendants' property were willful and intentional actions, intended to depreciate the property, and that this contention places the case outside of established Illinois case law. We have, however, examined defendants' counterclaim and find therein no allegations of intentional or willful conduct by petitioner.

■■ In connection with our determination that section 9.7 of the Eminent Domain Act should be construed to allow evidence of the amount of depreciation caused by the condemnation of the property due to prior public knowledge of the eventual condemnation of the property, we note that the court in *Department of Transportation v. Shaw* (5th Dist. 1976), 36 Ill. App. 3d 972, 345 N.E.2d 153, implied, in a statement (which was dicta), that the impact of section 9.7 was to allow, as a component of

compensation to the property owner in such proceeding, the amount of depreciation so caused. In that case the court stated (36 Ill. App. 3d 972, 983):

"We note that in the usual condemnation situation the condemning authority already has great latitude in determining when to file a condemnation petition. In a market in which property values are appreciating it is usually to a condemning authority's advantage to file the condemnation petition early, even years before the property is actually used for public purposes. In a depreciating market, however, it is often advantageous to the condemning authority to file as late as possible, that is, just prior to the commencement of construction of the public project. In either type of market it is sometimes beneficial to the condemning authority to announce a proposal for the public project long before commencement of eminent domain proceedings in the hope that because of the announcement, property values in the area to be taken will depreciate."

In the University of Illinois Law Forum, in an article entitled *Eminent Domain: Property Valuation* (1973 U. Ill. L.F. 449, 459), the author indicates that section 9.7 was enacted to bring Illinois into compliance with the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, and the author points out that if Illinois had failed to comply with the terms of that law, the Federal Government would be required to withhold approval of any program or project in Illinois which would result in the acquisition of real property for which Federal financial assistance would otherwise be provided. The author notes that section 9.7 changes existing Illinois law concerning valuation of the property and accomplishes this by defining fair cash market value and establishing that the market value is to be determined by providing that any appreciation or depreciation in the value of the property which is proximately caused by the project for which the property is condemned, shall be excluded in determining fair cash market value. The author states at page 459:

"Illinois now joins the majority of jurisdictions and excludes from valuation the enhanced value caused by the project. Since one element of value, enhancement caused by the improvement prior to the date the petition is filed, has been eliminated, the effect of adopting this value-exclusion rule will be to ease the tax burden on the general public by effecting a general reduction in the costs of public improvements.

The Illinois rule concerning enhancement in value after the petition is filed has always been that of the majority of the states and is merely codified by section 9.7. * * *

The Illinois rule as to whether depreciation in value caused by the project should be considered in the valuation of land actually taken has also been changed by section 9.7. Illinois now adopts the majority rule that depreciation in value is not to be considered, the rationale being that the condemnor should not be allowed to deflate land values in order to acquire the property at cheaper rates. It is argued that it would be a grave injustice to the property owner to force him to suffer the burden of depreciation caused by the condemnor."

The commentator continues at page 460:

"Section 9.7 of the Illinois Eminent Domain Act now ends this absurd rule of law and excludes depreciation caused by the project from valuation. In so doing, it properly shifts the balance to the side of the individual property owner. In this regard, it is important to distinguish the situation where depreciation occurs from the case where enhanced value results from the project. When depreciation is considered in valuation, something is taken away from the property owner that he had before the public project interfered. On the other hand, disallowing consideration of enhanced value caused by the project takes nothing away from the property owner that he had before the project. This difference throws the balance to the individual property owner in the case of depreciation but not in the case of enhancement. In all, the new Illinois rule excluding depreciation in valuation is a vast improvement."

Despite the fact that the language which appears in section 9.7 could have more clearly expressed the intention of the legislature, we believe that the conclusions as outlined by the commentator in the University of Illinois Law Forum, give a realistic and proper construction to the language of section 9.7, which we have been considering, and that the depreciation of the property of the defendants, caused by the improvement, should in fact be considered in determining the amount of money to which defendants are entitled in the condemnation proceeding.

For the reasons stated, therefore, the judgment of the Circuit Court of Rock Island County is reversed and this cause is remanded to that court for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

STOUDER and SCOTT, JJ., concur.